Quantech and Novopoint v. Vogel, and those are Cases 10-119, 10-696, and Mr. Scheps, I believe we'll hear from you first. May it please the Court, Counsel, I'm Gary Scheps, and I'm here for Novopoint LLC and Quantech LLC in Appeal 13-10119. And if there's one thing that identifies us as a free society, it's the fundamental, indefeasible right to own private property and to be secure from the threat that the government will not seize that property in an unreasonable seizure. And one of the cases that we've cited in our briefing, the United States Catholic Conference, although it's in a different context, makes very clear that one of the central principles of a free society is that courts be confined to finite bounds of authority. And those finite boundaries of authority protect citizens from excess judicial power. Now, the previous panel held that the fees could be taken from the alleged $1.6 million. That's correct. Okay. But that no more than that could be taken. Now, I suppose that if the fees did not amount to $1.6 million, that would go back to Mr. Barron or to the receivership. Is that right? It would go back to Mr. Barron or to the entities. Or to the entities. Yes, yes, Your Honor. All right. So is that what we are here today is that there's money left over or that you're saying the fees were too high and money should be left over? No, that's not what we're saying at all. What are you saying? Here's what we're saying. We're saying that some of these orders were entered right before oral argument in the Netsphere 1 case. Some of these orders were entered right after oral argument in the Netsphere 1 case but before the mandate came down. And so what we're saying is that the Netsphere 1 opinion ordered the district court to reconsider the fees that were awarded in light of an unauthorized receivership because they had been awarded in light of an authorized receivership. And what we're saying is that when we filed the notice of appeal, those orders were vested in this honorable court and it was impossible for the district court to reconsider the orders that are on appeal today because it had been vested in jurisdiction under the Griggs document. I got it. I got it. I got it. So it was impossible for the district court to reconsider these fees that are at issue today. Because it had no jurisdiction to act. It had no jurisdiction to act. That's what we're saying. So where are we then, under your theory? I don't understand the question. If you're correct, what follows from that? What follows from that is this court can remand these orders to the district court to be reconsidered in light of an unauthorized receivership. And that's all we're asking the court to do today. All right, but now how many orders were entered when the district court had jurisdiction as opposed to the orders that it issued when you say it did not have jurisdiction? Well, these orders were issued when the district court had jurisdiction. Which, well? The orders today, they were entered when the judge had jurisdiction, but when we filed the notice of appeal in February, the court had been divested of jurisdiction. And then the court held some kind of a hearing in April to reconsider, to carry out the mandate of the court. But over these five or six orders, there was no jurisdiction in the district court. But that's what I'm asking you. Did the district court ever have jurisdiction to enter any orders with respect to fees? Yes, yes, Your Honor. So you're not contesting those? We're not contesting those. Okay, so how much money are we talking about then? This is about a million dollars. About a million dollars of fee awards after the notice of appeal was filed in that earlier case. You're talking about the reallocation of the fees that Judge Ferguson made only. In other words, he said, well, given the opinion of the Court of Appeals, et cetera, anyway, he went back and entered an order. You get some money back. You don't get the money. I'm not going to order you to bring money back, et cetera. Yes, that's correct. And you want somebody else to do that again. Well, there was no jurisdiction over these orders. The relief you seek from this court is to go back and get another district judge to do the same thing. Yes, over these orders, which is a very small amount of money. You want another argument for the district court. There was about $5 million total awarded. And there's another small part, and the small part is that Quantec and NovaPoint were forbidden by Judge Ferguson to appear in his court under any circumstances represented by anybody but the receiver. So they were not permitted to come to court when the judge held a hearing to reconsider the fees in light of the mandate, and they were not hurt. All right, let me get down to the question that we have to decide here, and that's on jurisdiction. Yes. Because what I have understood from the papers that have been filed here is that you concede or argued that there is no jurisdiction. This was entered as an interlocutory appeal, and I have a document here, and I don't have the date on it, but it's filed after this appeal was filed, in which you say there is no jurisdiction. For us to even hear this, because looking at this document here that is filed by Mr. Haddock, is that you? I've never heard of him. Mr. Haddock? Yeah, who is that? Here he is right here. I'm not sure. I've never heard of him. Maybe you guys ought to introduce yourselves to each other. Yeah. Are you Mr. Haddock? He's my assistant. Okay, okay. Then he says here, he says, Jeffrey Barron respectfully requests this court to abate this appeal of two orders in order to allow the district court to hear the receiver's supplementals, etc., etc., and abatement should be granted because the matters to be heard by the district court are virtually identical to the issues which this court will be considering in this appeal in support of, he respectfully submits and then he says why this case, why we do not have jurisdiction over this case because it is not a final order. It's not a final appealable order. That's in the 696 case. That's not in the 119 case. The orders on appeal in the 119 case are interlocutory orders but they're appealable under 28 U.S.C. 1292 which is interlocutory orders are appealable if they take a step toward resolving the receivership or in winding down the receivership. It doesn't take a step toward it. Well, these orders awarded fees and those fee awards in a receivership are appealable on an interlocutory basis. Well, let's assume that there was no divesting of jurisdiction that the normal divesting affected by a notice of appeal doesn't obtain an attorney's fees in that situation. And then now what happens? Do we have those? Now we're . . . let's put that argument to one side and assume that that's not persuaded for the moment. Where are we? We now have the appeal or not before they . . . . . . exercise . . . could not exercise jurisdiction to reconsider the fee awards in those appeals because jurisdiction had been vested in this honorable court. What I'm suggesting to you is that the normal divest . . . it is not so clear to me that the normal notice divesting of jurisdiction resulting from a following a notice of appeal is obtained in these kinds of circumstances. Where the court retains jurisdiction to set attorney's fees, et cetera. Let's assume that that's correct. I understand your argument, but I want you to get past that and tell me now where we are. Well, where we are is that the district court has reconsidered . . . purportedly reconsidered all the fees and made his awards and . . . What's wrong with that award? Tell me if you'd quarrel with what he did in allocations, et cetera. What I believe is constitutionally infirm about the awards that were made is that Quantic and Novapoint were not heard. Do you have any argument against those awards other than the court lacked jurisdiction to do so? Yes. And what is that? That is Quantic and Novapoint did not have the opportunity to appear and to be heard and to challenge the fee awards. Okay. Now, what's wrong with the actual award itself? Get to his actual allocations, et cetera. Do you have a complaint about those? Well, I wasn't there. I was locked out, so . . . That's not my question. I understand that. But assume for the moment . . . Yes. I just want you to articulate, if you can, what your quarrel is. I want to know . . . Listen to me. I want you to tell me what looks to me like is a lot of proliferation and gamesmanship that's been going on in this litigation, and I caution you that that will not obtain in this court. I've read some of the transcripts in which you addressed the lawyer's . . . judge's blow. Let's leave it at that. I understand, Your Honor. All right. I sat on that district court for a long time. You talk like that to one of the district judges down there, and you wouldn't walk out of that courtroom. Now that we understand each other, go back to my question. To answer your question, I can answer it very simply. Well, do it. There was no consideration of the Johnson factors. There's no what? There was no consideration of the Johnson factors when the district court awarded the fees at the three-day hearing. He mentioned them in passing in the order, but that was it. There was no crystal clear consideration of each one of the Johnson factors, and therefore we believe that they could be reconsidered, but we're only arguing today about these five or six little orders.  Thank you very much, Your Honor. Thank you. Thank you. Okay. Let's see. Mr. Keaton, is that correct? Yes, Your Honor. Okay, and you're representing Noble Point. Noble Point and Quantech, Your Honor. Okay. I feel like it was the old joke with the real Mr. Higginbotham. Please stand up. Your Honor, my name is Paul Keating. I represent the limited liability companies Noble Point and Quantech in Appeal 696, and I will directly address some of the questions that Judge Higginbotham has asked. First, I'm going to just deal with some very salient issues. There are lots of issues in this case, but we don't have time to get to them all during oral arguments. First and foremost is the LLCs are not Mr. Barron, okay? Notwithstanding, my colleagues on the other side of this dispute constantly try to configurate them. They are not the same. The LLCs existed long before this receivership. They will hopefully continue to exist long afterwards. If you look at the Netsphere 1 case, and we are arguing— I'm not arguing Mr. Sheps's argument. I'm arguing only against the May receivership orders as to which the LLCs were prohibited from participating. Okay? If you look at the Netsphere 1 case, we have to sit down and we have to say what's the mandate of Netsphere 1? The mandate from Netsphere 1 was very clear. There was no subject matter jurisdiction over the limited liability companies. Therefore, the discussion about culpability, the reasons for the creation of the receivership, the numerous appeals that were filed, all that discussion is concerning Mr. Barron. The full stop in Netsphere 1 ends when this court decided that there was no subject matter jurisdiction. The remainder of that decision applies only to Barron. All right? So what impact does that have on the LLCs? Aside from the fact that we weren't allowed to participate in the fee hearing. First of all, it renders the receivership void as to my clients. Not voidable, not improper, not something that equity can solve. You can't breathe life into a void order. I don't care what the equitable principles are. So we look at a line of cases then that say, what do you do in a receivership when there's no subject matter jurisdiction? Well, there are very clear cases on point. We've got a line bond, okay? No subject matter jurisdiction. You don't look to recover your fees as against the corpus of the receivership, the large percentage of which was the limited liability company's assets. You must look elsewhere. Where do you look? Are you then challenging our earlier opinion that said the $1.6 million that was money in cash from the receivership, as I understood it, could be allocated to pay fees? We said that. We said that. Now, are you challenging that because you're saying that there's no basis whatsoever to pay fees from a receivership that has been declared a nullity? Let me answer your question, Your Honor, with a question. Let's suppose that the district court, when it came back and read Netsphere 1, the district court said, you know what? No subject matter jurisdiction here. I don't care what the equities were. All the equities deal with Mr. Barron, not the LLCs. Here's what you have to do, receivers. You have to give me an itemized description of what you've done. You have to show to me the benefit that you obtain to each of the various parties in this receivership, Mr. Barron, the LLCs. You have to show me under Parts 2 what Mr. Barron would have otherwise spent or what the LLCs would have otherwise spent. I'm not hearing an answer to my question. You will in a moment, Your Honor. If the district judge then said— Have I got that long? You don't. I'm sorry, Your Honor. If the district court had then declared that no fees were to be charged to the LLCs, would that be a violation of the mandate in Netsphere 1? And my answer is no. Why? Because there's no subject matter jurisdiction point in Netsphere 1 as to the LLCs. The remainder of it is a discussion of improper, where subject matter jurisdiction was there, but the receivership was otherwise improper. That all pertains to Mr. Barron. He was there. He was named. It was his personal assets that were at stake. My client was a complete stranger to this action. They were not named in the bankruptcy proceedings. They were not named in Mr. Barron's now-continuing involuntary bankruptcy proceedings. We were dragged in to be an innocent piggy bank, Your Honor. And if the district court judge had followed the mandate in Netsphere 1 that said no subject matter jurisdiction, then they would have been down the line of POTS. And POTS 2 says if there's no subject matter jurisdiction, the only thing the receiver can get is if there were—they can show a benefit to the estate. OK, Mr. Keaton. You've run out of time, I'm afraid. Thank you, Your Honor. Yes, sir. Thank you. We'll hear from Mr. Simon now, representing Mr. Barron. Good morning. Good morning to you. I don't have a whole lot of time to talk to you today. I'll try to answer the questions that you've asked and answer them succinctly. I don't believe that this proceeding should have gone forward today, whether you call it jurisdiction or whether you call it equitable extension or whatever. This is a preliminary matter. Judge Lindsey has now entered a final order. When did he enter the final order? Excuse me? When did he enter the final order? March 25th. And it's been appealed. And it's going to come up to this Court. But 18 months ago, I tried to get this whole thing, this train, stopped and consolidated. And for whatever reason, the panel that looked at my motion decided against it. I'm sorry for that because a lot of lawyers here have spent a lot of money and a lot of time. But that's where we are.  It's hard to understand this case. I understand. It's very difficult. I mean, y'all can't even get along with each other, I mean, apparently, even on the same side. I mean, you wanted us to allocate the different times that you could argue. And, you know, you pretty much blown the argument as far as I've gotten anything out of it. The bottom line, the second answer to your question, and it's going to be the same answer when we appeal the March 25, 2015 order, whether you find this interlocutory or you find Mr. Shep's orders interlocutory and you decide to shove it all down the road to the final deal, the argument is going to be the same, Your Honor. So what do you want us to do? What do I want you to do? What I'd really like you to do would be to rule today on some of the issues that we've raised only because we've spent so much time arguing them. I really would like to get some answers. Yeah, but whose fault is that? I mean, there's just absolutely no order whatsoever to this case that I can detect. I mean, it's just been all over the map. I need to answer your last question. Okay. Because I have no time. I need to answer your last question. All right, sir. And that's here one panel made some mistakes. They're outlined in our brief. I'm sorry to have to sit here and tell this honorable court that there's been a panel that preceded this panel that made a mistake. Oh, we tell each other that all the time. Bottom line is, Your Honor, if the court ruled that there was no subject matter jurisdiction in the district court to institute the receiverships over Mr. Barron's assets and over the assets of Novo Point and Quantec, end of story. Well, what can we do about that? You have to overrule the other panel. No, we can't do that. Well, what you have to do is go back and do the right thing. You have to read the decisions. You have to read Lyon bonding. As they say, if you want justice, you have to wait for another world. In this world, you get the law. Well, Your Honor, I will say this. And you've gotten the law. And it may not be to your liking, but you've gotten the law. Well, I will say this. If you look at the Netsphere opinion and you look at what the court did, the court remanded the case back for Judge Ferguson to decide the fees again on some sort of an equitable basis. Didn't say what the court was supposed to do. Didn't say what that equitable basis was. I mean, how can you tell a court what to do when the people before him won't do what he says to do anyway? You just kind of let him roll with the punches and see what he can get out of it. No, that's not true. That's just not true. Well, I mean, we've read this. I mean, we know. We've been respectful all the way down the road with the district court. We've not tried to. None of the parties have tried to be disrespectful to the district judge or to anyone. I'm not saying it doesn't necessarily mean disrespect, though there seems to be a tinge of that in there as well. But, I mean, it does have to do with acting in an orderly kind of way and not try to sabotage every time somebody on the other side moves. I mean, nobody gets along in this case. Here's the bottom line, Your Honor. If you go back and read the Netsphere 2 opinion and you go back to my briefs and analyze the Potts decisions, which were the basis for the Netsphere 1 opinion, there were two Potts decisions of this court followed by a decision. Okay, wait a minute. Wait a minute. Just tell me what you are saying now. Because you've said that the premise of your argument is that our previous panel was wrong. We can do nothing about that. And now you're arguing that the previous panel is wrong because of Potts. Well, I don't care. No, no, no, no, no. What I'm saying is that you need to go back and read those decisions and make sure, as was stated by counsel, that the mandate of the court is followed. Because the mandate of the court was to equitably adjust the fees. There was no instruction given as to how that would happen. Okay. But it was based upon Potts 2. And Potts 2 was a restitution case. Okay, Mr. Simon, you have surely run out of time. Thank you, Your Honor. Yes, sir. Thank you. If I hadn't argued something obviously in my brief, I would hope that I would not be waiving it. You've certainly not waived any arguments that you made in your brief. And now we'll hear Ms. Ashmore from Mr. Vogel. Oh, I'm sorry. Ms. Ashmore from Mr. Vogel. May it please the court. My name is Allison Ashmore, and along with my co-counsel, Christopher Cradeville and Jeff Fine, we represented the court-appointed receiver, Peter Vogel, before the district court. We are here today on a very narrow issue. Whether Judge Ferguson abused his discretion when he ordered the May 2013 fee order resolving applications for fees of the receiver and his professionals and implementing this court's mandate following the Netsphere 1 opinion. As Mr. Simon and other counsel have conceded, this court's prior decision in Netsphere 1 addressed the issues that they are raising here today. Because the law of the case doctrine, the mandate rule, and the rule of orderliness squarely foreclose relitigation of issues previously decided by this court. This court should affirm Judge Ferguson's May 2013 order. The court in Netsphere 1. Let me ask you this. Did you consider whether we have jurisdiction over that appellate jurisdiction? Yes, Your Honor. We have considered that question and raised it in our brief. The jurisdiction of this court over an interlocutory order, such as the May 2013 order, is in question. Appellants contend that this court has jurisdiction, at least in their briefs, contend that this court has jurisdiction under the collateral order rule. However, it's unclear whether the May 2013 order is one that is effectively unreviewable on appeal from a final judgment. Nevertheless, the receiver's position is that it would prefer a ruling from this court. A ruling from this court today on this order could go far to bring an end to this saga of litigation. Is there a final order has been entered now? Yes, Your Honor. A final order was entered in March of this year. But it's appeal, and it has other issues in it as well, correct? The final order has been appealed and has many issues. In the notice of appeal, did it include the matters that are raised in this appeal? I believe it includes all matters that could possibly have been raised. So these matters that are before us are subject of another appeal at this moment? I believe that is correct, Your Honor. Okay. That pretty much resolves it. Well, we believe that this court could take great strides in putting an end to the litigation by— I guess you could. I mean, somebody else you'd hire from the street do. But we have to have jurisdiction. You can't just—if we don't have jurisdiction, we don't have jurisdiction, and that's it. We can't cook it up. I admit, Your Honor, it is unclear whether this court has jurisdiction over this appeal of an interlocutory order at this time. Everybody wishes this thing went in, no question about that. No doubt about that, Your Honor. But you got just a—somebody got a little too anxious, it seems to me, in trying to end it when the path had a pretty big jurisdictional block in it. That is true, Your Honor, and we are the appellants here. And what we are here to do is to provide clarity to the extent that we can and encourage the court in proceeding down a path to reach a final resolution. We believe that the law of the case doctrine— Well, the history of this litigation doesn't pretend well for any termination of it. You've spent a great deal of time and I'm sure a lot of mediation money, too, to come up with a master settlement that has all—and very quickly unwound itself. The memorandum of understanding was immediately challenged, and it's just been going on and on and on. So I don't have a lot of optimism about the easy termination at this point. It's true, Your Honor. As you are all clearly familiar with the pattern of this case and the facts that existed prior to Netsphere I and that have led to this appeal and that have led to the final appeal that is ultimately pending, there's been a pattern and practice of vexatious litigation and multiplication of proceedings. What we would ask you to do is to follow the law of the case doctrine, the mandate rule, and the rule of orderliness. The prior panel in Netsphere I has already determined many of these issues. Unfortunately, it may take Mr. Barron and the LLCs hearing that same determination several times from this court, and they continue to request determinations from this court as well. Apparently, they're going to get an opportunity to hear it several more times. You've got other opinions pending. Well, I believe that those— They'll hear something. I don't know what they'll hear, but— I believe a ruling today could aid to short-circuit some of those opinions. What do you mean a ruling today? If this court determines that it has jurisdiction and enters an order affirming Judge Ferguson's implementation of the mandate and finding that he did not abuse his discretion in reconsidering the prior and pending fee applications without the sale of additional assets and in unwinding the receivership, as was ordered to be done by the mandate, an order of that nature could send a strong message that relates to the next appeal that is currently pending and not yet briefed, that that case also should be foreclosed by the law of the case doctrine, the mandate rule, and the rule of orderliness, such that these collateral issues do not continue to be litigated again and again before this court. Well, what do you say about the specific issues or the merits of the issues that they're raising concerning the absence of jurisdiction of the district court to enter these fee orders, at least some of them, given that the case was on appeal? That issue was determined by a prior panel in Netsphere 1. The court in Netsphere 1 clearly considered what assets were encompassed by the receivership. Although it ultimately found that the receivership was not a proper remedy, it did find that the district court was presented with a quandary and that a strong remedy needed to be put in place. That is, the district court had several golf clubs in its bag. It chose the wrong club, but nevertheless the ball needed to be kicked. So although the receivership was not the proper remedy, it nevertheless needed to put something in place to curb the issues. Well, I'm just saying that there is a contradiction in our last opinion, it seems to me, when we say that the receivership was void, had no authority or jurisdiction in a receivership, and yet took money from the receivership to pay the fees of the receivership, the fees incurred by lawyers and others in administering the receivership. I mean, you acknowledge that's an inconsistency, I suppose. You don't have any right to any money, but you can have a right to this money to pay the fees, but you can't get anything further because it's not your money to take. I mean, that's—I mean, they're trying to work this thing out, but it's inherently contradictory. I respectfully disagree, Your Honor. The court's discussion with regard to the subject matter jurisdiction over the LLCs and the imposition of the receivership really had to do with whether the receivership was an appropriate remedy given the conduct at issue that the district court was trying to curb. Because those assets were not— I said the district court had no authority in a receivership, right? That's what I understood. No authority, no jurisdiction over the receivership, no jurisdiction over the property of the receivership. Therefore, that meant that court could not disperse any of the funds and use any of those funds to pay any of the fees that were pending in the court. But yet our court says, well, you can use $1.6 million, but no more than that. That just seems like an inherent contradiction, but maybe not. Well, those assets were, in fact, before the district court and were included in part of the receivership. The LLCs acquiesced to being included in the receivership and were always included. And this court in Netsphere 1 saw that the receivership nonetheless did encompass those assets and as an equitable solution determined that the receivership expenses should be charged against the receivership estate, which although improper, did in fact encompass those assets. So although NovoPoint and Quantec raised jurisdictional issues now in an attempt to skirt any obligation and avoid jurisdiction, the prior panel in Netsphere 1 determined that they were in fact part of the receivership. There is also evidence in the record that the court considered finding the LLCs to be the alter egos of Mr. Barron, and there is no question that Mr. Barron was subject to the receivership and the jurisdiction of the court. Relying on all of the circumstances that the panel was looking at, they determined that the assets— Explain that to me now, that Mr. Barron, that the receivership that was a nullity, had jurisdiction over Mr. Barron? Is that what you're saying? Well, the receivership, which was found to be an improper remedy, was put into place over Mr. Barron. Well, I mean, if the receivership was a nullity to begin with, it had no authority ever over Mr. Barron, did it? No, Your Honor, it did not. It was found to be improper. But what a prior panel of this court found was that an equitable solution to an improper receivership would be to wind down the receivership and charge the receivers fees and expenses against the assets of the receivership. But if you don't have subject matter over an entity, you haven't got any jurisdiction to do equity with respect to that entity or lawsuit. I mean, it's a mess. I'll admit that. Well, the panel did the best they could, and I'm not faulting them, but I mean, it's a mess made by the parties in this case. Anyway, tried to do the best we could. This mess could be easily done away with by following the law of the case doctrine, the mandate rule, and the rule of orderliness, and following the prior panel's decision to include those assets— because we don't have much choice about that. The question is whether we have any jurisdiction today. The prior panel found that you did, and I would encourage the same opinion in following the law. No, the prior panel didn't deal with our jurisdiction. Oh, I misunderstood the question. I thought we were back to the others. No, Your Honor. As to the jurisdiction over this appeal today, it is an open question for this court to determine. The receiver would prefer a remand. You put it so gently. It's wide open. I can't find it. It is, Your Honor. I see that my time is up. Unless you have further questions, I will— Thank you very much for your argument. I appreciate it. Thank you, Your Honor. And we'll hear from Ms. Green. Is that right, Ms. Green, who is representing Gardair, Winn, and Sewell. Good morning, Your Honor. May it please the Court? My name is Debbie Green, and I represent Gardair, Winn, and Sewell, LLP, which represented the receiver during a part of the receivership. And what is your interest in it now? Gardair was awarded—represented the receiver and was awarded fees under the receivership. How much were you awarded? A total of approximately $1.4 million, and the Court— $1.4 million? Correct, Your Honor. And where did that money come from? From the assets of the receivership. From the assets of the receivership. And—but how does that figure into the $1.6 million that our previous opinion referred to? Well, Your Honor, may I please clarify that $1.6 million? The Netsphere One opinion said that the Court, in reassessing the fees, we were talking about additional fees that were being sought. So the Court said that the Court should reassess— the Netsphere One panel said the Court should reassess all fees. And to the extent that there were additional applications for fees pending, the Court could award additional fees out of the cash that was on hand, which Barron represented to the Court was approximately $1.6 million, which they now claim was actually more, and that was not an accurate account of what was in the fund as cash. And so the Court was—the District Court on remand reassessed all fees, awarded Gardeer, based on the Johnson factors, its approximate $1.4 million that had previously been awarded, but denied future requests. Gardeer had also requested an additional half—approximately $500,000 in fees, and the Court denied that request based on the mandate and the Court's opinion. You know, I was just thinking, no wonder Roy L. Ferguson decided to resign from the judiciary and move to law school. Your Honor, I don't actually— We're talking about nothing but attorney's fees, so what's in this litigation that's left other than attorney's fees, not to make lightly attorney's fees, but what are the disputes, the large legal disputes here, other than lawyer's fees? Your Honor, I actually cannot speak to that. Gardeer is no longer representing the receiver. I understand that the receivership has been wound down, and I don't know what the status is of the underlying dispute between Netsphere and Barron. I just wanted to make a few brief points. First of all, we disagree that there's any inconsistency in the Netsphere opinion, but to the extent that the Netsphere 1 panel got it wrong, that was a matter for either the en banc court or for the Supreme Court, and appellants sought rehearing en banc and filed a writ with the Supreme Court, and both were denied, and so that ship has sailed. But we also believe, as to the merits, the Netsphere 1 panel did not get it wrong. When we're talking about receiverships, we're talking about an equitable remedy, and as such, there really is no clear-cut rule as to how you deal with issues relating to receiverships. And so, you know, Barron and Novopoint and Quantec argue that with respect to the issue of cost for an improper receivership, that there is a strict rule, and that just isn't the case. And they cite various case laws, early 20th century cases, that the Netsphere 1 panel did consider and found that the only rule is due equity. There is no strict rule, regardless of whether the court had jurisdiction or not, over the property in the receivership. The ultimate goal is to do equity under the particular circumstances of each case. And when you look at the cases that the appellants are citing, such as line bonding and landing trust, Knox and Chemical Products, and Speakman, searching for a strict rule, there is no strict rule there. There is no rule requiring disgorgement, which is actually what they're seeking. They want all professionals, despite the work and the good work that the district court found that they did on behalf of the receivership, to disgorge all fees. And that is not required by any precedent of this court or of any Supreme Court case that they've cited. So I believe, you know, the Netsphere 1 panel fashioned a remedy that was appropriate to the circumstances, an equitable remedy that was permitted by all the case law. And that remedy was to — the remedy was quite clear. And if you look at the Netsphere 1 opinion, the court said it recognized and acknowledged all the arguments that the appellants have made. There is no requirement that they segregate fees based on estates, LLCs versus Barron, funds that came from Barron's personal assets versus funds that came from selling domain names that belonged to the LLCs. Additionally, there is no requirement that there be an alter ego finding for including the LLC's assets in the receivership. And, first of all, we believe that there was such a finding, but that's not a requirement for receivership. The LLC assets were under the control of Barron, and that is quite clear from the record. Barron either owned or controlled — he was the sole beneficiary of the trust that owned the LLCs. And, in fact, in the bankruptcy case — Let me ask you a question, Ms. Green. In Netsphere 1, we ordered the district court to take steps to wind up the receivership, and that included paying fees to professionals. The final fee order, arguably, is simply a complying with an order to wind up the receivership and not refusing to do so. If that's true, then why would there not be jurisdiction under 1292A2 in that they're taking steps to accomplish the purposes of windup? We believe they did have jurisdiction to comply with the mandate and wind down the receivership. That's it, Mike. I'm sure you'd like to find jurisdiction in this court, but I'd like your comment on that particular suggestion. Do you have any case law that addresses that particular formulation? I didn't hear the argument about that. The statute does make explicit reference to receiverships, and I'm looking at the language here of 1292A2, that the court's appeals should have jurisdiction appeals from interlocutory order to pointing receivers or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property. I asked earlier the question of what's really left in this litigation are the attorneys' fees, and the answer is if you've got the attorneys' fees wound up, you would pretty well have this done. Well, this sounds like arguably a large step toward winding up the receivership. We believe so. We believe that, and as I said, I'm not positive there's anything left. And if you read there . . . That's where one didn't terminate the receivership directly. It was mandated to the district court to take proceedings to do so, right? Correct. So that the wind-up would continue. The wind-up, albeit that it was an improperly ordered receivership, should not affect the wind-up provision. I wouldn't think so, but I don't know what the law is on that. I don't have any case law for your honor at this time. That may be why I don't have any. Submit supplemental briefing on this issue. Okay. You want supplemental briefing? If the parties want to file a letter of briefing and address that explicitly, it would be helpful to me. We'll do so, your honor. Thank you. If there's nothing further, I assume that . . . Okay. Thank you, Ms. Green. And Mr. Shep, you have saved two minutes for rebuttal. Thank you, your honor. Yes, indeed. Thank you, your honor. Just a few points of rebuttal. The LLCs didn't acquiesce to being in the receivership. Judge Ferguson made a ruling at the hearing that the LLCs had always been included in the receivership, and they ordered the LLC's attorney to agree to the language of the order. They appealed the order that put them into the receivership, so they challenged that from the very beginning. And my reading of the Netsphere One opinion is that the prior panel, the panel in that opinion, vacated and set aside the receivership order and ordered the district court to wind down the receivership and discharge the receiver is my reading of the order. So why isn't this an appeal from an order made pursuant to the wind down? I'm sorry, Judge. Why is this not an appeal from rulings made pursuant to a wind down of the receivership? Because these were under 1292A, as you just read, that these were orders that are appealed in the 119 are orders in furtherance of the receivership, and that's the payment orders to the receiver. And I believe that the Netsphere One panel got it exactly correct in all of its rulings, in all of its respects. Well, we said in a case called Warren v. Bergeron that that would not confer jurisdiction from appeal. The district court is vacating the appointment of receivers, but here you're talking about what I thought Judge Ferguson was doing was entering the attorneys' fees, et cetera, and modifying them or not. And that was incident to the termination of this receivership. Was it not? Yes. Yes. And the Netsphere One opinion just said that equity controls, and they didn't say what the standard was. I understand that, but that's not my—that's really— I'm trying to get to the question of jurisdiction. I understand. But, yes, these orders that are on appeal on the 119 case were appealed when the district court had jurisdiction. He made these rulings. They were appealed, and then because they were vested in this court, our position is that these orders couldn't be reconsidered under the mandate in the Netsphere One opinion. And that's essentially it, but if— I understand that argument, so that the only— if we have jurisdiction of the wind-down of the primary case, the later orders are the only issue that have a jurisdictional hurdle. And that turns on whether or not the notice of appeal will effectively deprive the district court of jurisdiction when it's a matter of attorney's fees, which is where we started our discussion some while back. That's exactly correct, but we're only challenging these attorney's fees, which are about $1 million. We're not—our appeal doesn't have anything to do with the 4 or 5 million that was awarded already. So, however, I would like to mention one thing, that this court decided in 1908 in the Beach v. Macon grocery case that the only expenses that are chargeable in an improper receivership are those fees that inure to the benefit of the receivership. And— That ship sailed with a prior panel. I'm sorry, but it's right or wrong. I understand. Thank you very much, Your Honor. Thank you, Mr. Shipps. Mr. Keaton, you have a couple of minutes. And Mr. Simon has graciously given me his minute, Your Honor. I'm collecting time here. I wanted to address Your Honor's question, which was the inconsistency in Net Sphere 1, which I don't believe there is. Net Sphere 1 can be understood very clearly as no subject matter jurisdiction as to the LLCs, full stop. Those cases apply that apply to no subject matter jurisdiction. There is a very clear rule from this circuit court and from the U.S. Supreme Court on that. Those are cited in our brief. Those cases which deal with an otherwise improper receivership, which applies to Mr. Barron, are subject to the equitable principles that are laid out in those cases. And if you look at the decision in Net Sphere 1, the decision is clearly separated. My clients are not even referenced in Section 2 and Section 3. Mr. Keaton, what relief for your clients do you seek from this court? My relief, Your Honor, is an order directing that the district court order the receiver and those people seeking all fees to segregate those fees based upon the estate, to make a discussion to explain how each estate benefited, and to identify those funds which each estate would have spent had there not been a receivership. Because that's the only way that you can distribute these. You're dealing with two people of which two different parts of the mandate apply. And the trouble is that the appellants like to mix it all up because they don't know whose money is whose. They've used all my clients' money to pay their fees. Is there anything left in this overarching dispute other than attorneys' fees? Well, Your Honor, we have to understand that when we entered into this matter, I think the LLCs had approximately 150,000 domain names which were profitable, paid more than the amount of registration fees. At this point in time, when the receivership was finally distributed, the assets piecemeal, they were distributed to a person, and I think that there were approximately 50,000 domain names left. There was a huge amount of money that was spent here, Your Honor. It's not just legal fees. Okay. How do those disputes get resolved? Those disputes get resolved in the way that I explained. This is going to take some time for the district court to unwind this, and it's fair that enough time be taken to unwind it. But this is the only thing that needs to be done. The underlying Netsphere matter is concluded. The settlement agreement was fully satisfied. The appellees will argue that, well, we can ignore this subject matter jurisdiction issue because, because, because possession, right? Well, you can't cure a bad subject matter jurisdiction with possession. If you could, there would be no such thing as subject matter jurisdiction. As to your point, Your Honor. If Peter gets one more minute. One minute. Put one minute on this. The matter of jurisdiction of this court, I would answer twofold. One is I believe with appellant that instruction from this court, guidance from this court would be extremely helpful in the district court level. And the faster that that guidance can be issued, the better and the more efficient things will run. Secondly, under 1292B, it's not just orders in connection with the wind down of the receivership. It's distributions of property. Cash is property. I could sue a person for converting my cash. It's property. It's in the plain meaning of the statute. Therefore, this action is repealed. What if we just simply affirmed? No opinion, nothing. We affirmed. Where would you be then? I'd be making this argument to the Supreme Court. Well, I understand that. And I'd be making the same argument. But assuming the Supreme Court denied, sir, where would the case be if we just affirmed? I mean, is it still going on and on and on and on? Well, yeah. I think it would be because you've got, as Mr. Simon said, you have another appeal coming forward. You're going to see these same arguments again. I think with guidance of this court, those arguments can be shaped quite well. What I do object to is I know that this has been a colossal waste. It could make a bar review question for the next ten years. But it's not my client's fault. We didn't do anything. We didn't do anything to initiate the receivership. We didn't do anything during the receivership to maintain it. We were frozen out. The receiver was the LLC's counsel. We didn't file vexatious appeals. And even if there were a lot of appeals, yes, there were a lot of appeals. As Your Honor has pointed out, the jurisdiction over these interlocutory orders is questionable. There's no clear authority that's come out of this court or the U.S. Supreme Court that says we shouldn't be doing it. It's not clear. It's conservative judicial attorney practice to file an appeal so as not to waive the right. But the other thing not to be missed by the court is the appellants have won. Wound it down, wound it down. Go ahead. I'm finished, Your Honor. I'm finished.  It's been a huge waste of time. But I think that with some guidance from this court, we can actually move this train wreck down the yard to get it repaired. Okay, Mr. Keaton. Thank you, Your Honor. Yes, sir. Thank you. Okay, we'll take up the floor.